UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ABD ALHARAM ALI,

        Plaintiff,

**COMPLAINT**

vs.

VILLAGE OF HAVERSTRAW, RUBEN
BERRIOS and MICHAEL KOHUT,

        Defendants.

------------------------------------------------------------X

By and through his counsel, Michael H. Sussman, Esq. plaintiff

Hereby alleges against defendants:

## I. PARTIES

1. Plaintiff, Abd Alraham Ali, is the proprietor of "the Phone Spot" and "A's Chill Ice Cream." He resides within this judicial district, and, for the last decade, his businesses are, and have been, located within the Village of Haverstraw, within this judicial district.

2. Plaintiff is of Jordanian descent, identifies as Arabic, and is a Muslim.

3. Defendant Village of Haverstraw is a municipality organized pursuant to the laws of the State of New York. It is situated within this judicial district and may sue and be sued.

4. At all relevant times, defendant Ruben Barrios served as Building

1

Inspector for defendant Village and, as such, was [and remains] vested with certain discretionary authority conferred by state and local law and, in using such authority, acts, as he has at all relevant times herein, on behalf of the Village of Haverstraw and in its name.

5. At all relevant times, defendant Michael Kohut served as Mayor of defendant village. Defendant Village is governed by a Board of Trustees, which the Mayor leads. The Mayor exercises supervisory control over the Buildings Department and all village agencies.

6. Neither individual defendant is of Arabic origin nor Muslim.

## II. JURISDICTION

7. Since Plaintiff alleges that, while acting under color of state law, defendants Berrios and Kohut violated plaintiff's constitutional rights as final policy-makers for defendant Village and so acted on behalf of the Village, dictating its liability, this Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. secs. 1331, 1343 (3) & (4) and 42 U.S.C. secs. 1983 and 1988.

## III. FACTUAL ALLEGATIONS

a. Cigarettes and Rolling Paper

8. In January of 2024, plaintiff leased a property situated at 2 West St., Haverstraw, NY 10927 and created an ice-cream store, "A's Chill Ice Cream."

2

within 1,000 feet from one another.

17. At the time defendant Berrios prevented Plaintiff from selling cigarettes and rolling paper, he knew that a law relating to "smoke shops" did not exist and that the law relating to "cannabis and tobacco paraphernalia shops" was not applicable because the range of products plaintiff intended to sell was insufficient to qualify as such a shop.

18. Defendant Berrios further knew that, by selling cigarettes and rolling paper, Plaintiff's business would best be considered a tobacco shop, a use permitted by right pursuant to the laws of Defendant Village, as listed in Attachment 8 - Table of General Use Regulations: CBD District.

19. Before prohibiting plaintiff from using his space as set forth in paragraph 11 above, defendant Berrios permitted retail shops owned by non-Arabic/non-Islamic persons in the same zoning district to sell tobacco and rolling paper.

20. Upon information and belief, businesses defendant Berrios permitted to sell cigarettes and rolling paper, which are approximately within 500 feet from one another, and owned by non-Arabic/non-Islamic persons include: "Serie 32 Grocery" (20 Main Street); "R & A Grocery of Haverstraw" (36 Main Street); and "Los Primos Market and Deli" (72 Main Street).

21. Likewise, Defendant Berrios knew that Plaintiff spent $16,000 dollars on inventory and acquired a "Retail Dealer Certificate of Registration for Cigarettes & Tobacco Products" from the NYS Department of Taxation and Finance, allowing for the lawful sale of cigarettes and

4

27. At the time of his conversation with Plaintiff, Defendants Mayor Kohut and Berrios knew that a law relating to "smoke shops" did not exist, and that the Village law relating to "cannabis and tobacco paraphernalia shops" was not applicable because the range of products plaintiff intended to sell was insufficient to qualify as such a shop and because this location was not so proximate to another like store.

28. About the same time they denied plaintiff a Certificate of Occupancy for 48 Broadway, defendant Berrios granted Certificates of Occupancy to "Family Store" (3 New Main Street) and 99 cent store (7 New Main Street), much closer than 500 feet from each other, permitting them both to sell cigarettes and rolling paper.

29. Further, even if the materials Plaintiff sought to sell at 48 Broadway amounted to the opening of a "cannabis and tobacco paraphernalia shop," this location was not within the prohibited proximity of another like shop.

30. Defendants never employed similar logic to deny a person who was Caucasian and not Muslim a certificate of occupancy.

   a. <u>Cricket Mobile Store</u>

31. On or around July 29th, 2025, Plaintiff was approached by representatives of Cricket Wireless about opening a store within the village exclusively to sell Cricket Wireless products.

6

39. On September 8, 2025, Plaintiff learned that his ice-cream store was excluded from participating in the Village's annual Food Crawl event, organized by Haverstraw River-wide Arts, sponsored by the Village of Haverstraw, and held within its Central Business District.

40. The sponsors identified those businesses which participate in the Food Crawl on the official Food Crawl map; the Village closed streets to vehicular traffic during the Food Crawl, enabling attendees to walk freely throughout the area and directing foot traffic to participating businesses.

41. In or about July and August 2025, although other businesses surrounding Plaintiff's ice cream store received in-person solicitations to participate in the 2025 Food Crawl, the event sponsors did not solicit Plaintiff's participation.

42. Upon information and belief, none of the businesses that participated in the 2025 Food Crawl is owned by Arabic or Muslim persons.

43. In addition to being excluded from the Food Crawl, the sponsors placed a music stage directly in front of Plaintiff's store, blocking the store from view by event attendees.

44. Plaintiff met with Defendant Mayor Kohut to understand why his business was being excluded from the Food Crawl and why his business was being blocked.

45. Although Defendant Mayor Kohut initially indicated he had no

8

a. U-Haul

52. In July of 2013, Plaintiff leased property situated at 23 New Main Street, Haverstraw, NY 10927.

53. The leased property houses plaintiff's retail store, "the Phone Spot," which is situate in the "Central Business District," a zoning designation made pursuant to an enactment of Defendant Village.

54. On June 25, 2025, Plaintiff became an authorized "U-Haul Dealer," openly and notoriously using a private parking area that is part of the property he leases for his business, the Phone Spot.

55. Plaintiff parked for lease three commercial vehicles provided by U-Haul.

56. Although Plaintiff used the private parking lot for these commercial vehicles, customers renting the vehicles were responsible for picking up and dropping off the rentals, using their cell-phone U-Haul application to complete rentals of their vehicles.

57. On occasion, if customers were unable to access the private parking, Plaintiff advised them to park the vehicles in a parking lot controlled by Defendant Village because the parking lot has traditionally been "open and free to everyone."

58. Defendant Village knew of Plaintiff's status as an authorized U-Haul dealer, and the accompanying circumstances thereto; Plaintiff

66. Not wishing to be evicted, plaintiff swiftly removed the U-Haul vehicles from the parking lot associated with 23 New Main Street, the building he rented for his phone store.

67. Upon information and belief, defendants have treated plaintiff differently than similarly situated businesses; for example, Mega Electronics, a retail store located at 27 New Main Street, whose outdoor area is clearly visible and used to store automobiles when installing electronic equipment for customers (e.g., car stereos, automatic ignitions, etc.), amounts to a violation of the Certificate of Occupancy issued for the business.

68. This business is not owned or operated by an Arab person of the Muslim faith.

## IV. <u>CAUSES OF ACTION</u>

69. Plaintiff incorporates paras. 1-68 as if fully restated herein.

70. Defendants' discriminatory and pretextual actions, including the selective enforcement of laws against Plaintiff on the basis of his ancestry and religious affiliation, violate the First Amendment to the U.S. Constitution and are made actionable through 42 U.S.C. sec. 1983.

71. Defendants' discriminatory and pretextual actions, including the selective enforcement of laws against Plaintiff on the basis of his ancestry and religious affiliation, violate the Fourteenth Amendment to the U.S. Constitution and are made actionable through 42 U.S.C. sec.

12

1983.

## V. <u>PRAYER FOR RELIEF</u>

WHEREFORE, this Honorable Court should accept jurisdiction over this matter, award Plaintiff, and as against each Defendant, compensatory damages; award Plaintiff, as against each individual defendant, punitive damages for the violation of his constitutional rights, as set forth above; and award Plaintiff the reasonably incurred costs and attorneys' fees arising from the prosecution of this matter pursuant to 42. U.S.C. sec. 1988, and any other relief which the interests of law and equity require.

Dated:  February 12, 2026

Respectfully submitted,

MICHAEL H. SUSSMAN [3497]

SUSSMAN & ASSOCIATES
Po Box 1005
Goshen, NY 10924
(845)-294-3991
Sussman1@sussman.law

13